# Allen *v.* The State.

*Indictment for Forgery.*

1. *Forgery of receipt.*—A receipt for money paid on account is an instrument in writing by which a pecuniary demand purports to be discharged or diminished, and is the subject of forgery in the second degree (Code, § 4340), if falsely forged or altered with intent to defraud.

2. *Same; alteration of date.*—The alleged forgery being an alteration in the date of a genuine receipt, by changing 1882 to 1884, it can not be assumed, on demurrer to the indictment, that the alteration was immaterial, as increasing one demand to the same extent it purported to diminish another ; but, if the evidence showed that in fact the existing indebtedness was not diminished, the payment being simply transferred from one debt to another, this would be pertinent to the inquiry whether there was an intent to defraud.

3. *Proof of suits without production of record.*—It being shown that the altered receipt was introduced as evidence by the defendant on the trial of an action on an attachment bond, which he had instituted against the person whose name was signed to the receipt, and who had sued out an attachment against him ; the actions at law being collateral to the issue, it is not necessary that the records thereof should be produced before a witness can be allowed to testify in regard to them.

4. *Witness testifying to his examination before grand jury.*—There is no error shown in allowing the prosecutor to testify to the fact that he was examined as a witness before the grand jury, since such evidence may sometimes be material, or it may have been introduced as merely preliminary to something else.

5. *Amendment of verdict.*—When the verdict of the jury is not in proper form, the court may inform them of the defect, before they are discharged, and instruct them to retire and consider further of it ; and the defendant can not complain of this action.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case was indicted for the forgery of a receipt, to which the name of W. V. Bell was signed, and which was in these words: "$220.18. Received of Jack Allen two hundred and twenty dollars and eighteen cents, on his account, this Sept. 15, 1884." The second count of the indictment charged that, before the finding thereof, "Jack Allen did falsely, and with intent to defraud, forge a receipt for the payment of money, purporting to " [be] " the act of one W. V. Bell, by which a pecuniary demand purported to be discharged or diminished, and which is in words and figures as follows," setting it out; "the said forgery consisting in the changing of the date of said receipt from the year 1882 to the year 1884." The defendant demurred to this count, because

[Allen v. The State.]

of the omission of the word *be*, shown above by the brackets; and because it charged no offense; and because its averments were inconsistent and repugnant; and because the instrument set out did not purport to discharge any pecuniary demand; and because it did not aver or show that the alteration was material. The court overruled the demurrer, and the cause was tried on issue joined on the plea of not guilty.

On the trial, as the bill of exceptions shows, the execution and alteration of the receipt having been proved by said W. V. Bell, the court admitted it as evidence under the second count, and the defendant excepted to its admission. "The State asked said Bell, if he was a witness before the last grand jury of this court; and the court allowed the question to be asked, as stated, for the purpose of allowing the time of the alleged forgery to be fixed; to which action and ruling of the court the defendant objected and excepted." The prosecution adduced evidence showing that said Bell had sued out an attachment against the defendant; that the defendant afterwards brought an action on the attachment bond; that on the trial of that suit he, through his attorney, introduced in evidence the said receipt alleged to have been altered; and that all these matters "took place in said county, within the time covered by the indictment." The defendant moved the court "to exclude from the jury the evidence in reference to the attachment suit, and the suit on the bond, and the issues therein, on the ground that the records should be introduced, as better evidence thereof;" and he excepted to the overruling of his motion. The defendant, testifying as a witness for himself, stated that he did not alter the date of the receipt, nor procure its alteration by any one else, and that he could neither read nor write.

The jury returned a verdict in these words: "We, the jury, find the defendant guilty in the second degree." When the verdict was read by the clerk, the court called their attention to its informality, "and directed then to correct it; and they thereupon took the papers, and, having retired for a few minutes," returned a verdict in these words: "We, the jury, find the defendant guilty of forgery in the second degree." To the action of the court in permitting the jury to amend their verdict the defendant excepted at the time.

MOORE & FINLEY, for the appellant.—(1.) The indictment was fatally defective in several particulars, as pointed out in the demurrer. The receipt does not purport to discharge any pecuniary demand; nor does it appear on its face, or by the averments of the count, that the alteration of the date was material. *Prima facie*, the alteration was wholly immaterial,

[Allen v. The State.]

merely diminishing one debt as it increased another; and the evidence entirely fails to show how it became material. 2 Bish. Cr. Law, § 573 ; 2 Bish. Cr. Proc., § 416 ; 2 Abb. Law Dic. 385 ; 2 Leach, C. C. 672, 753 ; *Rembert v. State*, 53 Ala. 467. The word *be*, omitted from the indictment, was material, and its omission can not be cured by intendment. *Roundtree v. State*, 58 Ala. (2.) The records of the attachment suits, or the original papers if no record had been made up, were the best evidence of the facts to which the witnesses were allowed to testify, and ought to have been produced. (3.) The verdict, as at first returned, was fatally defective, and was equivalent to an acquittal ; and the court ought not to have permitted it to be changed.

THOS. N. McCLELLAN, Attorney-General, for the State, cited the following authorities: *Jones v. State*, 50 Ala. 160; *Thompson v. State*, 49 Ala. 16 ; 53 Ala. 467 ; *Horton v. State*, 53 Ala. 491 ; Clark's Manual, 90, § 536 ; *Allen v. State*, 52 Ala. 391.

STONE, C. J.—The indictment in this case was framed under section 4340 of the Code of 1876, and contains two counts. The offense, if sufficiently averred, is forgery in the second degree. There was a demurrer to each count, which the City Court overruled. The paper set out in each count is, in form, a receipt for money, paid on account by Jack Allen, to W. V. Bell. The offense charged is, that Jack Allen did falsely forge said instrument, with intent to defraud ; and in each count it is averred, that by such instrument, so alleged to be forged, a pecuniary demand purported to be discharged or diminished. Our statutes permit this alternative, or disjunctive form of averment.—Code, § 4797. And if either one of the intents or results charged be shown—all being alike criminal—this will sustain both the indictment and the conviction. The offense is complete, and of equal criminality, whether the instrument alleged to have been forged purported to discharge in full, or only to diminish a pecuniary demand. A copy of the receipt is set out *in hæc verba;* and its necessary purport and implication are, that Allen was, at the date of the receipt, indebted to Bell on account, and that by the receipt the indebtedness was diminished, or acknowledged to be diminished, by the sum expressed in the receipt. Any false making, or alteration of such a paper, in the name of another, purporting to produce this result, if done with intent to defraud, is forgery in the second degree ; and the jury, under proper instructions, are judges of the intent.—*Thompson v. State*, 49 Ala. 16 ; *Rembert v. State*, 53 Ala. 467 ; *Allen v. State*, 74 Ala. 557 ;

[Allen v. The State.]

*Baysinger v. State,* 77 Ala. 63. Nor is there anything in the omission of the word " be " in the second count. The context supplies it.

What we have said above demonstrates, that the City Court did not err in refusing to give the charge asked by the defendant. If the receipt was intended to diminish a pecuniary demand, that is as much a violation of the statute, as if the intention was to discharge it altogether.

There was a demurrer to the second count of the indictment, assigning as one of the grounds, " that said count is insufficient in not showing wherein the alteration of the date of said receipt was material." The second count, after charging that defendant " did falsely, and with intent to defraud, forge a receipt for the payment of money, purporting to (be) the act of one W. V. Bell, by which a pecuniary demand purported to be discharged or diminished," contains a copy of the receipt as it appeared after the alleged alteration was made, and adds, " the said forgery consisting in the changing of the date of the said receipt from the year 1882 to the year 1884."

Section 4340 of the Code of 1876, as amended by act approved January 27, 1883—Sess. Acts, 33—defines the offense for which defendant was prosecuted. Each count of the indictment contains every material ingredient of this statutory crime. No form of indictment for this species of forgery is given in the Code. The nearest analogy, perhaps, is found in forms 49 and 52, p. 997 of the Code. The indictment is sufficient in form.—Code, §§ 4799, 4824.

It is urged, in support of the demurrer, that the alteration of the receipt set out in the second count, and charged to be the forgery complained of, does not, on its face, appear to be material. We can not assent to this. As we said above, the implications of the receipt are, that Allen was indebted to Bell by account, and that Bell acknowledged the payment of the sum of two hundred and twenty dollars on that account. Indebted and partially paid, when? Evidently at the date of the receipt as altered, 1884. Here, then, according to the face of the paper, was evidence that Bell held a pecuniary demand against Allen in September, 1884, on which the latter obtained a credit of that date, diminishing the debt or liability by the sum of two hundred and twenty dollars. This was the purport of the paper; and thus the case charged is brought directly within the statute, if the intent was to defraud ; and whether such was the intent, was for the jury to inquire.

Without explanation, it is no answer to this implication or purport, that the paper, as originally drawn and signed by Bell, proved an indebtedness in 1882, and a corresponding diminution of that indebtedness by the sum expressed in the

receipt. Diminution of one indebtedness, is not necessarily an enlargement of the other. If we could assume that the indebtedness of 1882 still existed, or constituted a part of the indebtedness of 1884 as one continuing pecuniary demand, and that the alteration of the date was only a transfer of the credit from one date to a later one, then, indeed, the alteration would seem to be immaterial. But we can make no such assumption. The transaction charged, and the altered receipt on its face, purport to diminish an indebtedness in 1884, and there is nothing to raise the presumption that it increased the indebtness of 1882 by a corresponding amount. We can not presume the indebtedness of 1882 still existed. For aught that we can know, or presume, that indebtedness had been cancelled, allowing Allen the benefit of the payment, of which the receipt furnished the evidence, and a second use was attempted to be made of it, in part payment, or diminution of the pecuniary demand of 1884. The possession of the receipt by Allen does not militate against this. Receipts for partial payments need not be, and are not usually taken up, when final settlement is made. So we hold, that there is nothing on the face of the indictment to repel, or weaken the implication, that the receipt as alleged to be altered diminished a pecuniary demand, and the demurrer was rightly overruled.—*Rex v. Hope*, 1 Moody, 414.

If it had been shown in proof that the alleged alteration did not in fact diminish the indebtedness from Allen to Bell, but simply transferred the payment from one debt to another, this would have been pertinent testimony on the inquiry whether there was an intent to defraud. No ruling of the court brings that question before us.

The testimony tends to show that Bell had sued out an attachment against Allen, the defendant in this case, and that Allen had sued on Bell's attachment bond ; which latter suit had been tried, and Allen testified as a witness on the trial. The receipt, the subject of the alleged forgery, was admitted on all hands to be genuine, except as to date. Bell testified that the true date of the receipt, as given by him, was 1882. It was produced on the trial of the suit on the attachment bond, and purported to be dated in 1884. The sole purpose for which evidence of the two civil suits was offered, was to lay a predicate for, and furnish an introduction to the testimony of Jack Allen, given in the suit on the bond. The testimony tended to show that, in his evidence on the trial of that suit, Allen produced the receipt in its present form, and claimed that it truly represented a payment made by him in 1884. The material bearing of this testimony was, that it tended to prove that Allen uttered the paper as true, which was an im-

[Floyd v. The State.]

portant circumstance in determining whether he was concerned in its alteration, if altered it was. The trial in which he gave testimony was not a material fact in this case, for the asserted right under the receipt would have been equally potent under the inquiry of forgery *vel non*, if it had been deliberately made under different circumstances. The trial and judgment, even if proved by the record, could have exerted no influence in the determination of the issue before the jury in this case. It was the mere accident of the case, describing the occasion on which the instrument, alleged to be fraudulently altered, was uttered. The attachment suit, and the suit on the bond, were not in issue in this case. They came up collaterally; or, correctly speaking, they had nothing to do with the case. The utterance as true was the material fact; the suits, the accidental accompaniment. This is not a question of primary and secondary evidence, but simply the proof of an accidental, or collateral fact. The City Court did not err in allowing the witness to speak of the suits, without the production of the records.—1 Green. Ev. § 573 *b*; 1 Brick. Dig. 849–51, §§ 638, 659, 665, 681, 686, 753; *Graham v. Lockhart*, 8 Ala. 9; 1 Whar. Ev. § 64.

Nor did the City Court err in allowing the witness Bell to testify that he had been examined as a witness before the grand jury. Of itself, this proved nothing hurtful, and may have been introduced merely as a reminder, or stepping-stone, to the subject about which he was called to testify. There are many possible categories, in which such inquiry would become necessary, or, at least, proper.

The verdict, when first returned by the jury, was imperfect. The court informed them of the imperfection, and instructed them to retire and consider further. This they did without having dispersed, and without having been discharged. The court in this only did its duty.—*Allen v. State*, 52 Ala. 391.

Affirmed.