26 So.2d 532

### DICKEY v. STATE.

#### 6 Div. 280.

Court of Appeals of Alabama.
June 11, 1946.

414

K. C. Edwards, of Birmingham, for appellant.

Wm. N. McQueen, Atty. Gen., and Macdonald Gallion, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

Appellant was indicted and found guilty by a jury of larceny of a motor vehicle and of United States War Savings Bonds, the total value of the property stolen being fixed by the jury at $1665.

Evidence introduced by the State tended to show that early on the morning of 4 July 1945 Mr. Arthur Dobell parked his black Hudson sedan automobile in the garage of the Thomas Jefferson Hotel garage in Birmingham, Alabama. Personal property consisting of $750 in war bonds, two electric fans, clothing, and other items were in the automobile when it was left in the hotel garage. The automobile and its contents were missing when Mr. Dobell returned to the garage to claim it late that afternoon.

Some four or five days later Mr. Dobell's car was found just across the Tuscaloosa County line in the vicinity of Kimbrell. It had been completely burned, and the trunk compartment bore evidence it had been ripped open.

At about the time of the discovery of the car bonds of the total value of $200, which had been among those in the car at the time it was left in the hotel garage, were returned anonymously to Mr. Dobell through the mail.

On 1 August 1945, some three and a half weeks after Mr. Dobell's car and its contents had been stolen, the appellant was taken into custody by Mr. Craven, of the State Fire Marshal's Office, and Mr. McCoy Helton and Mr. F. E. Tranum of the Birmingham Police Department. At the time he was taken into custody appellant was walking along 19th Street in Bessemer, accompanied by Lawrence Cooley.

Appellant and Cooley were taken by the officers to the Birmingham City Hall in separate cars. Tranum and Helton rode in the car with appellant. These officers testified that on the way to the city hall appellant was seen to reach toward his hip pocket. He was told to turn around and Tranum pulled a brown paper sack out of the

pocket appellant had attempted to reach. When·questioned appellant said the package had been lying on the seat when he entered the car and he had slipped it in his pocket. Upon examination the contents of this paper sack were found to be twenty-one Government War Bonds of $25 denomination each, and bearing the name of Arthur Dobell. During a later examination appellant asserted he had found the sack on the street in Bessemer between the time he had left the place where he worked and his arrest.

The appellant testified that he was at his father's home in Tuscaloosa County from the night of 3 July to 5 July, having been driven there by a man named "Bill," whose last name he thought was Martin. Martin's car was a black Plymouth sedan. He and "Bill" remained at his father's home drinking until "Bill" departed on 4 July and appellant left the· next day. Testimony of appellant's father and Mrs. Maude Dempsey who resides in Mr. Dickey's home in Tuscaloosa County tended to corroborate appellant's version of his whereabouts on the 3, 4, and 5 of July, as well as a showing made of the expected testimony of his mother who was ill and could not attend the trial.

Appellant also maintained on his examination at the trial that he had found the bonds while walking along a street in Bessemer in company with Lawrence Cooley. When he found the bonds Cooley had suggested to appellant that he put them in his pocket and try and obtain a reward. Shortly thereafter they were accosted by the officers.

Witnesses who testified for defendant were positive of the dates appellant was at his father's home because appellant's mother, Mrs. Dickey, had broken her arm on 3 July. The arm was swollen on 4th July so badly she went to Birmingham for treatment. It appears Mrs. Dickey walked some distance to catch a bus to Birmingham. On cross examination defense witnesses sought to explain why she had not been driven in "Bill's" car by saying that appellant could not drive it and that "Bill" was too drunk to drive.

■ While there are expressions in our cases that possession of recently stolen goods, without a reasonable explanation of such possession raises a presumption of guilt of larceny of the goods (see Jackson's case, 167 Ala. 77, 52 So. 730; Thomas v. State, 15 Ala.App. 163, 72 So. 688), or that such possession is prima facie evidence of guilt (see Morrow v. State, 19 Ala.App. 212, 97 So. 106), a more accurate statement in our opinion of the real effect of possession of recently stolen goods is found in Bryant v. State, 116 Ala. 445, 23 So. 40, wherein Justice Haralson said that such possession is a fact from which the jury may infer guilt.

■ The reasonableness of the possessor's explanation concerning his possession of recently stolen goods is for the jury. Bryant v. State, supra; Preuit v. State, 21 Ala.App. 561, 110 So. 53. Likewise whether the theft was "recent" is ordinarily for the jury. Gilbreath v. State, 23 Ala.App. 33, 120 So. 304. In the instant case the goods were stolen on 4 July and a portion of them were found in appellant's possession about 1 August, about three and a half weeks later, a length of time which in our opinion was well within the vague and undefined term of "recently" stolen.

■ No evidence directly connecting appellant with the theft of Mr. Dobell's automobile was presented by the State. However, the bonds found on appellant were in the automobile when it was stolen. Possession of a portion of recently stolen goods constitutes a fact from which the jury could infer that the possessor had stolen all the goods taken at the time of the larceny. No Alabama case has been found pertaining to the above announced doctrine, but such seems to be the rule of other jurisdictions, and we think it sound. See State v. Lott, 40 N.M. 147, 56 P.2d 1029, State v. Drew, 179 Mo. 315, 78 S.W. 594, and annotations thereto found in 101 Am.St.Rep., at page 518.

■ In our opinion no error resulted from the court's action in overruling objection interposed by appellant to the question propounded on redirect examination to the witness Helton as to whether he had "investigated" Lawrence Cooley to determine if he had any of the bonds in view of the fact that appellant had in cross exam-

ining this same witness examined him rather intensively as to what efforts he had made in trying to locate the property stolen from Dobell.

Appellant's counsel insists that the court erred in overruling his objection to a question propounded to appellant on cross examination pertaining to his conviction in Michigan under the name of Robert Rice of an offense for which he received a sentence of from 23 to 24 months in the prison at Jackson, Michigan. The grounds assigned were that prior convictions must be within this jurisdiction in order to be admissible as effecting the credibility of the witness. Such is not the law. Under sections 434 and 435, Title 7, Code of Alabama 1940, a witness' credibility may be tested by examining him as to prior convictions for offenses involving moral turpitude. Ordinarily the conviction of a crime punished by imprisonment in a penitentiary, or as in this case in a state prison, involves moral turpitude within the meaning of the above sections. See Moore v. State, 12 Ala.App. 243, 67 So. 789. In Michigan a felony is defined as an offense for which one on conviction may be punished by death or imprisonment in a state prison. 1929 Comp.Mich.Laws, Sec. 17118. The prison at Jackson, Michigan, is a state prison. 1929 Comp.Mich.Laws. Sec. 17544. The court was therefore correct in permitting cross examination of appellant as to prior conviction in another state for an offense involving moral turpitude in order that the jury might properly weigh his credibility as a witness. Williams v. State, 28 Ala. App. 481, 189 So. 81, certiorari denied 238 Ala. 40, 189 So. 84.

As to other rulings by the court on objections to testimony, we are of the opinion that the rulings were in each instance so patently correct that they need not be written to.

During his argument to the jury the Solicitor stated: "I don't want to go around the streets and park my car, knowing that that man there would steal it." The court sustained appellant's objection to this part of the argument and instructed the jury they were not to consider it. We do not think that error calling for a reversal of this case resulted from the court's

action in thereafter overruling appellant's motion for a mistrial because of this statement, as we do not feel, in light of the court's action, that appellant's rights were so prejudiced as to render a fair trial very doubtful. Pruitt v. State, 22 Ala.App. 353, 115 So. 698.

The sole written charge requested by appellant in the trial below was the affirmative charge in his favor. From what has been said above it follows that the court correctly refused such requested written charge.

Affirmed.